John F. Miller and Beth L. Miller v. Commissioner.
Miller v. Commissioner
Docket No. 72091.
United States Tax Court
T.C. Memo 1959-155; 1959 Tax Ct. Memo LEXIS 94; 18 T.C.M. (CCH) 673; T.C.M. (RIA) 59155; July 31, 1959
Beth L. Miller, pro se, 1412 Twenty-Second Street, Sacramento, Calif. John O. Hargrove, Esq., and Aaron S. Resnick, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The only issue in this case is whether the petitioners are entitled to dependent exemptions for 1955 for three minor children of John F. Miller by his former wife Margaret M. Miller. Findings of Fact John F. Miller and his wife, Beth L. Miller, filed a joint income tax return for 1955. They were living in Stockton, California, during the first part of that year, but in July moved to Sacramento. John was previously married to Margaret M. Miller. They had three children, all boys. John and Margaret were divorced in 1950 and the custody of *95 the children was given to Margaret. She has lived at all times material hereto in a house at 3439 San Mateo Avenue, Stockton, California. She owned the house. The other occupants of the house during 1955 were the three boys, who were then 8, 11 and 13 years of age. Margaret has not remarried. She was a school teacher, and her salary from that occupation during 1955 was approximately $5,000. John paid to Margaret during 1955, pursuant to a court order, $40 a month for each of the three boys and $30 a month alimony for Margaret. John also paid the following amounts during 1955: $29.50 for glasses for one of the boys, $13.90 for tires and repairs to a bicycle or bicycles and $12.50 to a veterinarian for treatment of a dog that belonged to the children. He also gave each of the younger boys from $52 to $60 and the oldest boy from $104 to $120 during 1955. The boys visited his house three or four times in 1955, but there is no proof of any support being paid by John incident to those visits. John paid premiums during 1955 in the total amount of $428.43 on two policies of insurance on his own life, of which he had possession. The named beneficiaries of the policies during 1955 were his *96 three sons above mentioned. The record does not show that these were term policies of insurance, that John could not have changed the beneficiaries as he chose, that the policies did not have cash surrender values which he could have taken at any time during 1955, that he could not have or had not borrowed on the policies or that he could not have taken other action whereby the policies would not have benefited the three boys. The petitioners did not pay over half of the support for 1955 of any one of the three boys mentioned above. Opinion MURDOCK, Judge: There is no copy of the notice of deficiency in the record in this case. However, there is evidence that the petitioners filed a joint return for 1955, and the parties both recognize that the only issue is whether these petitioners are entitled to exemptions for any one of the three minor sons of John under section 151(e) of the Internal Revenue Code of 1954. Apparently the mother was allowed deductions for the three boys as dependents. It was incumbent upon John to prove that over half of the support of one or more of the children for the year 1955 was received from him in order for him to be entitled *97 to an exemption for any one of these children. The petitioners not only have failed to sustain this burden of proof but the evidence as a whole shows that the mother of the children furnished over half of the support of each one of the boys during 1955 from funds other than those received from John. It is clear that John made payments for the support of the children under a court order in the total amount of $480 for each child. He also gave each some cash. Payments from these two sources might have amounted to as much as $600 in the case of the oldest boy and $540 in the case of the two younger boys. He also paid some small amounts not in excess of $25 per boy. The petitioners claim that the insurance premiums paid by John during 1955 in the amount of $428.43 should be included as support for the three children received from him, but the evidence fails to sustain this contention. These were not shown to be term policies. The three children were the named beneficiaries during 1955, but there is no evidence that John could not have changed the beneficiaries, surrendered each of the two policies for cash, borrowed the full loan value of the policies or exercised other rights inconsistent *98 with those of the three children. These questions were discussed at the time of the trial, and it was agreed that letters would be sent to the two insurance companies inquiring as to the rights of the insured and that any replies to such inquiries would be furnished to and received by the Court as evidence in the case. The Court was thereafter furnished a copy of the reply from one of the companies. Apparently the other one did not reply. The letter from one of the companies stated, in effect, that the beneficiary designation was not irrevocable, the insured retained the right to change the beneficiary and to exercise all policy provisions, including the right to surrender the policy for its cash value or secure a policy loan. The letter further stated: "On September 24, 1955 this policy had a cash surrender value of $849.00 which was subject to a policy loan of $263.95. In 1955, as the Insured had full control of the policy at that time as well as at the present time, the full value of the policy, less any outstanding loan, could have been borrowed by him." The Court cannot conclude, under such circumstances, that the payment of the premiums was an expense paid in support of the *99 children, despite the fact that they might ultimately receive the proceeds of the policies. Some undisclosed part of the premiums was building up a valuable asset of the insured, who retained all of the rights under the policy for himself during the taxable year. The evidence shows, furthermore, that the mother of the boys alone furnished the house in which they lived and its fair rental value was about $1,200, of which $300 could be allocated to each of the four occupants. It also shows that aside from the $1,440 furnished by the father under the court order for the support of the children the mother, from her own separate funds, furnished an even larger amount for their support. The Court is unaware of the amount of the deficiency determined by the Commissioner. Decision will be entered under Rule 50.